UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KURT MIRANDETTE,

        Plaintiff,

                                     Case No. 1:16-CV-50

v.

                                     HON. GORDON J. QUIST

NELNET, INC. and NELNET
SERVICING, LLC,

        Defendants.

_____/

## OPINION

      Plaintiff, Kurt Mirandette, a Michigan citizen, filed a class action complaint against Defendants, Nelnet, Inc. and Nelnet Servicing, LLC, alleging jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453. In his three-count complaint, Mirandette alleges claims for violation of the Nebraska Consumer Protection Act[1], Neb. Rev. Stat. §§ 59-1602, 1609, and the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(15), and a claim for breach of contract. Mirandette alleges that Defendants improperly reap additional interest and late fees on student loans by failing to timely credit payments.

      Defendants moved to dismiss all of Mirandette's claims on various grounds. The Court heard oral argument on July 13, 2016.

      For the following reasons, the Court will grant Defendants' motion as to all claims.

## I. FACTS

      On or about February 29, 2008, Mirandette signed a Master Promissory Note (MPN) and became a co-borrower on his daughter's student loans. Mirandette makes all of the loan payments

---

[1]Although Mirandette identifies his claim as one under the Nebraska Consumer Fraud Act, the correct title of the statute is the Consumer Protection Act. *See* Neb. Rev. Stat. § 59-1601.

by check, which he mails to Defendants, who service the loans.  (*Id.* at PageID.2; ECF No. 17 at PageID.335.)  The MPN is a form prepared by the Department of Education and is identical for each borrower every year.  (ECF No. 1 at PageID.8.)

The MPN uses the terms "pay" and "paid" when referring to a borrower's obligation to repay the principal balance, but it does not define the terms "Payment Date" or "Effective Date" relating to the borrower's obligation to repay the student loan.  (*Id.* at PageID.5–6.)  Mirandette alleges that, in the absence of a definition of the term "Payment Date," the common law requires Defendants to use the date of mailing as the date that a borrower makes a payment.  (*Id.* at PageID.6.)  Mirandette alleges, however, that Defendants fail to apply the so-called mailbox rule and instead credit payments much later, resulting in Defendants obtaining millions of dollars in unearned interest and late fees from Mirandette and other borrowers.  Alternatively, Mirandette alleges that if the mailbox rule does not apply, Defendants improperly assess interest and late charges by failing to credit payments until days or weeks after the date Defendants receive them.  (*Id.*)  For example, Mirandette alleges, on December 13, 2014, he mailed a payment to Defendants that was not was not credited until 24 days later, on January 8, 2015.  (*Id.* at PageID.7.)  Mirandette claims that Defendants intentionally delay crediting his payments in order to receive the maximum amount of interest and late charges.  (*Id.*)

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).  The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  DISCUSSION

#### A.    Consumer Protection Act Claim

In Count I, Mirandette alleges that Defendants violate §§ 59-1602 and 1609 of the Nebraska Consumer Protection Act (NCPA) by intentionally failing to credit payments at the time Defendants receive them, in order to charge borrowers more interest and late fees.  Section 59-1602 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."  Section 59-1609 authorizes a person injured "in his or her business or property by a violation [of the act]" to bring a civil action to enjoin further violations and to recover, among other things, actual damages.

Defendants argue that Mirandette's NCPA claim is subject to dismissal because the exemption set forth in § 59-1617(1), which exempts certain regulated conduct from the scope of the

NCPA, applies in this case.  Pursuant to § 59-1617(1), "actions or transactions otherwise permitted, prohibited, or regulated under laws administered by . . . any . . . regulatory body or officer acting under statutory authority of [Nebraska] or the United States," are exempt from the NCPA.  *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1103–04 (C.D. Cal. 2012) (analyzing application of § 59-1617(1) to activity regulated by the Food and Drug Administration).  Defendants argue that this exemption applies because the Secretary of Education and the Department of Education heavily regulate student loans made under the Federal Family Education Loan Program ("FFELP") pursuant to the Higher Education Act, 20 U.S.C. § 1070 *et seq.*  Defendants also note that the Consumer Financial Protection Bureau (CFPB) exercises significant and concurrent oversight over student loan servicers such as Defendants.  Mirandette responds that the exemption does not apply in this case because no regulation governs the timing of crediting student loan payments.

In *Kuntzelman v. Avco Financial Services of Nebraska, Inc.*, 206 Neb. 130, 291 N.W.2d 705 (1980), the Nebraska Supreme Court stated that "regulation, in and of itself," is not enough to trigger the regulated conduct exemption.  *Id.* at 135, 291 N.W.2d at 707.  In other words, "[c]onduct is not immunized merely because the person so acting falls within the jurisdiction of a regulatory body." *Id.*  Rather, "the very action complained of . . . [must be] subject to regulation."  *Id.* at 136, 291 N.W.2d at 708.  The plaintiff in *Kuntzelman* alleged that the defendant violated the NCPA by requiring the plaintiff to reaffirm prior indebtedness that was discharged in bankruptcy.  The court concluded that the exemption applied because the loan at issue and the defendant were "strictly regulated" by the Department of Banking and Finance (DBF) and Nebraska's installment loan act. In particular, the DBF had both the power and duty to inspect the books, records, and accounts of lenders doing business under the installment loan act, as well as to order such persons to desist from any practice that the DBF found inconsistent with the act.  *Id.* at 135–36, 291 N.W.2d at 708.  The

court further noted that the installment loan act restricted advertising regarding the rates, terms, and conditions of loans and authorized the DBF to take action against lenders found to be in violation of the act. *Id.* at 136, 291 N.W.2d at 708. Thus, the court concluded that the defendant was exempt from the NCPA "by virtue of the regulation by the [DBF] of the specific transaction involved herein." *Id.*

The Nebraska Supreme Court also applied the exemption in *McCaul v. American Savings Company*, 213 Neb. 841, 331 N.W.2d 795 (1983), another case involving a loan subject to oversight by the DBF. The court applied the exemption because the loans at issue were reported to, and indirectly approved by, the DBF. *Id.* at 847, 331 N.W.2d at 799.

In *Hydroflo Corp. v. First National Bank of Omaha*, 217 Neb. 20, 349 N.W.2d 615 (1984), the plaintiff sued a bank that allowed a depositor to endorse checks listing the plaintiff as the payee and deposit the proceeds into his account. The depositor had opened an account in the name of the plaintiff but failed to furnish the bank the requested corporate resolution authorizing the opening of the account. The court held that the act of opening bank accounts was excluded from the NCPA because the banking act gave the DBF "broad authority over proper banking standards," and the requirements for opening corporate bank accounts were governed by banking standards that the DBF indirectly approved. *Id.* at 33, 349 N.W.2d at 622. Similarly, in *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 NW.2d 523 (1995), the court held that a bank's issuance of a certificate of deposit was exempt from the NCPA because the bank was heavily regulated by the state and the certificate used was at least indirectly approved by the state through the DBF's authority to constructively aid banks in maintaining proper banking standards. *Id.* at 916, 531 N.W.2d at 529–30.

Similar to the loans and banking practices at issue in the foregoing cases that were subject to oversight by state regulatory agencies, student loans issued under the FFELP are heavily regulated by the Department of Education (DOE). Such loans, and the entities that make, service, and guarantee them, are governed both by statute and regulations promulgated by the DOE. *See* 20 U.S.C. § 1082; *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1030 (9th Cir. 2009). Pursuant to the FFELP, Congress has granted the Secretary of Education and the DOE broad authority to prescribe regulations, including regulations pertaining to servicers; audit financial transactions of, impose civil penalties against, and limit, suspend, or terminate the participation of lenders and guaranty agencies; and promulgate standardized forms and procedures covering "all aspects of the loan process," including common application forms, promissory notes, and master promissory notes. 20 U.S.C. § 1082(a), (f), (g), (h), (l), and (m). The provisions of the FFELP "[e]stablish a set of rules that . . . apply across the board," *Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010), including the terms for each type of loan, such as the maximum interest rate that may be charged depending on the type of loan and date of its origination. *Id.* at 944 (citing 20 U.S.C. §§ 1077a, 1078). Pursuant to its statutory authority, the DOE has promulgated a comprehensive set of regulations to implement and enforce the FFELP program. *See Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 590 (4th Cir. 2005). Such regulations govern, for example, the individuals and entities eligible to participate in the FFELP program, 34 C.F.R. § 681.101; disclosures that a lender must make regarding repayment, 34 C.F.R. § 682.205; and the charges that lenders may impose on borrowers, 34 C.F.R. § 682.202. The regulations make clear that the rules, restrictions and procedures that apply to institutions extend to third-party servicers, such as Defendants, 34 C.F.R. § 668.1(a), and impose specific requirements and duties on third-party servicers, 34 C.F.R. § 668.25. Finally, numerous regulations address payment issues, such as the commencement of interest and

the repayment period and the method of applying payments and prepayments, 34 C.F.R. § 682.209(a), (b), and the circumstances giving rise to default, 34. C.F.R. § 682.200(b). In short, all aspects of student loans under the FFELP program are subject regulation by the DOE.

Apart from the DOE, the CFPB has regulatory oversight of student loan lenders and servicers. *See* 12 U.S.C. § 5514(b). In fact, recently, the CFPB has given particular attention to problems that student loan borrowers experience with lenders and servicers. *See* Consumer Financial Protection Bureau, *Annual Report of the CFPB Student Loan Ombudsman*, Oct. 16, 2012, available at http://www.consumerfinance.gov/data-research/research-reports/annual-report-of-the-cfpb-student-loan-ombudsman/. Moreover, exercising its regulatory authority, the CFPB, along with the DOE and the Department of Treasury, requested comments from the public regarding student loan servicing issues. *See* Consumer Financial Protection Bureau, *Student Loan Servicing, Analysis of Public Input and Recommendations for Reform*, Sept. 2015, available at http://files.consumerfinance.gov/f/201509_cfpb_student-loan-servicing-report.pdf. Of particular note are comments that specifically address the timing of posting of payments, with many commenters suggesting payments should be posted on the date of receipt. *Id.* at 74–75, 124–125.

Citing *Hage v. General Service Bureau*, 306 F. Supp. 2d 883 (D. Neb. 2003), Mirandette argues that because there is no specific regulation addressing when a loan servicer should credit payment to an account or issue an "effective date" of payment, the exemption in § 59-1617(1) does not apply. However, *Hage* is distinguishable from the present case because, while the defendant in *Hage* was required to be licensed under the Collection Agency Act, the defendant's acts were not regulated by the Collection Agency Board. *Id.* at 890. As set forth above, the same is not true in the instant case. Moreover, in the Court's judgment, *Kuntzelman*, *supra*, disposes of Mirandette's argument. In *Kuntzelman*, although the Nebraska legislature had adopted a provision addressing the

7

specific alleged violation after the fact, *Kuntzelman*, 206 Neb. 132, 291 N.W.2d at 706, the court nonetheless applied the exemption to claims that arose before that time, in spite of the dissent's view that "the actions involved herein were not specifically regulated by the terms of the installment loan act . . . prior to the passage of Neb. Rev. Stat. § 45-187 (Supp. 1979)."  *Id.* at 136, 291 N.W.2d at 708.  The lack of a specific regulation thus did not preclude the application of the exemption.  *See also In re ConAgra Foods, Inc.*, 908 F. Supp. 2d at 1104 (noting that "the exception to the Nebraska statute is broader than federal preemption, and applies to all conduct regulated by federal agencies").  Therefore, Mirandette's NCPA claim will be dismissed.[2]

**B.      Deceptive Trade Practices Act Claim**

In Count II, Mirandette alleges that Defendants violated the Deceptive Trade Practices Act (DTPA) by delaying the application of Mirandette's payments.  Mirandette requests actual, punitive and/or exemplary damages, as well as injunctive relief.  (ECF No. 1 at PageID.13.)  As an initial matter, Mirandette cannot obtain damages under the DTPA because a plaintiff may obtain only injunctive relief under that statute.  *WWP, Inc. v. Wounded Warriors, Inc.*, No. 8:07CV370, 2009 WL 382752, at *1 (D. Neb. Feb. 12, 2009).

Regardless of the relief that Mirandette may obtain, his claim is barred by the DTPA's four-year statute of limitations.  Under the DTPA, a "civil action . . . may be brought only within four years from the date of the purchase of goods or services."  Neb. Rev. Stat. § 87-303.10.  Assuming for purposes of the instant analysis that obtaining a loan constitutes a "purchase of goods or services," the limitations period would have commenced in 2008, when Mirandette signed the MPN.  Mirandette argues that his claim is timely because he "purchases" Defendants' services each time

---

[2]In light of this determination, the Court need not address Defendants' alternative argument that Mirandette lacks standing to sue under the NCPA.

8

he makes a payment that includes interest.  Mirandette further argues that his claim is timely because Nebraska would apply the continuing tort doctrine to renew the accrual date each time he makes a payment.  Mirandette's premise that his payments to Defendants constitute the purchase of a good or service cannot be sustained.  A borrower's loan payment to a servicer cannot reasonably be considered a purchase of a good or service, for when Mirandette makes a payment, he is not purchasing anything.  Moreover, to the extent Defendants perform a service, they do so for the lender pursuant to the terms of their contract with the lender to service loans.  *See  Ihebereme v. Capital One, N.A.*, 933 F. Supp. 2d 86, 108 (D.D.C. 2013) (noting that "crediting payments to the mortgage does not constitute a trade act under the [D.C. Consumer Protection Procedures Act]").  Thus, Mirandette's DTPA claim will be dismissed as untimely.

## C.  Breach of Contract

In Count III, Mirandette alleges that Defendants breached the MPN by failing to credit Mirandette's payments as of the date he mailed them.  Mirandette alleges that the words "pay" and "payment" are not defined in the MPN, but he claims that "[u]nder the common law of contracts, which applies in Nebraska, Michigan, and every other state, a payment is made by mail when it is dispatched or sent, not when it is received."  (ECF No. 1 at PageID.14, ¶ 86.)  Mirandette alleges that Defendants' failure to credit Mirandette's payments until some time after they were sent constitutes a breach of the MPN.

Defendants argue that the breach of contract claim is subject to dismissal for several reasons.  First, they contend that because a promissory note is a unilateral contract that the lender fully performs at the time it disburses the loan proceeds, Defendants could not have breached any contractual duty to Mirandette.  Next, Defendants argue that the claim fails because Mirandette does not allege that Defendants breached any provision of the MPN that obligates Defendants to credit

payments as of a certain date.  Finally, Defendants contend that Mirandette's argument that he made partial payments on the MPN is an affirmative defense to an action on the MPN, rather than an independent claim that may be asserted against a lender.  Mirandette responds that the MPN is a bilateral contract because Defendants had additional executory duties beyond disbursement of the loan proceeds.  Mirandette further argues that the absence of a specific provision requiring the lender to credit payments as of a certain date is of no moment, as the Court is authorized to "fill gaps" in otherwise enforceable contracts, and the Court should fill the so-called gap by applying the mailbox rule to make the date of mailing the date of crediting.  Alternatively, Mirandette argues that if the mailbox rule does not apply, an issue of fact remains about what the words "pay" and "payment" mean in the MPN.  Finally, Mirandette disputes that his breach of contract claim is, in reality, an affirmative defense.

Both parties' arguments have facial merit, but, as explained, none of them carries the day. First, Defendants are correct that Mirandette fails to cite a specific provision in the MPN that Defendants breached.  In fact, there is no provision governing when payments are to be credited. However, this is not news to Mirandette, as he acknowledges as much in his complaint by asking the Court to apply the mailbox rule.

Mirandette's argument that the Court may use the mailbox rule to provide a missing term in the MPN governing the time that Defendants must credit Mirandette's payments cannot save his claim from dismissal.  First, the mailbox rule is a judicially-created rule that has been applied in various settings to determine whether a party's act of doing something by mail is effective and/or timely.  *See Higgenbottom v. McManus*, 840 F. Supp. 454, 455 (W.D. Ky. 1994) (noting the United States Supreme Court's recognition of the mailbox rule for determining whether a document filed by an incarcerated party was timely filed); *In re Harper*, 153 B.R. 84, 85 (Bankr. N.D. Ga. 1993)

("Under the judicially created mailbox rule, a letter that is properly addressed and placed in the mails raises a presumption that it was received by the addressee"); *Hogan v. Pat's Peak Skiing, LLC*, 168 N.H. 71, 73, 121 A.2d 827, 829 (2015) (noting that the common law mailbox rule "is one that is traditionally associated with contract law, and provides that acceptances are effective when they are no longer in the control of the sender").  In the context of payment, the mailbox rule "states that a check, properly addressed with postage prepaid, constitutes payment at the moment it is deposited in the mail, provided the parties either have a custom of payment by mail or have expressly authorized payment by mail."  *Cortez v. Cortez*, 145 N.M. 642, 644, 203 P.3d 857, 859 (2009) (citing 60 Am. Jur.2d *Payment* §§ 11, 17 (2007)); *see also Hoch v. Hitchens*, 122 Mich. App. 142, 147, 332 N.W.2d 440, 442–43 (1983) ("It is well settled that in contractual relationships, the actual delivery of legal tender is not required where there is a course of dealing which justifies the debtor in believing that some other means (*e.g.*, mailing) and forms of tender (*e.g.*, personal check) will suffice." (citing 60 Am. Jur.2d *Payment* § 17)).  Thus, the mailbox rule is not a means of filling a gap in a contract.

Even more problematic for Mirandette is that the mailbox rule addresses issues concerning *payment*, not a creditor's obligation to apply or post a payment at a certain time.  Mirandette cites no case, and the Court, after extensive research, has found none applying the mailbox rule to impose an obligation on a creditor to post a payment as of the date the borrower deposits it in the mail.  In fact, in the mortgage servicing context, Regulation Z requires servicers to credit payments *on the date of receipt*.  *See* 12 C.F.R. § 1026.36(c)(1)(I).  Moreover, in the Court's judgment, even when payment is authorized by mail, no borrower could reasonably believe that a creditor is *obligated* to credit the borrower's payment at the time of mailing, when the creditor does not even possess the payment instrument by which it could convert the payment into actual funds.  Certainly, fairness

11

does not dictate that a creditor give a borrower credit for funds the creditor has not yet received. Therefore, Mirandette's breach of contract claim will be dismissed.

There may be a cognizable claim lurking in the factual scenario that Mirandette alleges—i.e., delaying posting of checks in order to pump up interest and penalty income—but it is not this Court's responsibility to find it and plead it. Therefore, the Court will give Mirandette 14 fourteen days to file a motion for leave to file an amended complaint if he can discern a valid claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss as to all claims. Defendants' Motion to Strike (ECF No. 18) will be denied as moot. Mirandette will be granted   fourteen days to file a motion for leave to file an amended complaint.

An Order consistent with this Opinion will enter.


Dated: August 11, 2016                                  _____/s/ Gordon J. Quist_____
                                                                    GORDON J. QUIST
                                                              UNITED STATES DISTRICT JUDGE